[Cite as *State v. Musarra*, 2026-Ohio-2531.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
# COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellant, | : | |
| | | No. 113487 |
| v. | : | |
| NICHOLAS MUSARRA, | : | |
| Defendant-Appellee. | : | |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** REVERSED IN PART, VACATED IN
PART, AND REMANDED
**RELEASED AND JOURNALIZED:** July 2, 2026

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-21-662718-A

***Appearances:***

Michael C. O'Malley, Cuyahoga County Prosecuting
Attorney, and Daniel T. Van, Tasha L. Forchione, and
Michael R. Wajda, Assistant Prosecuting Attorneys, *for
appellant*.

Cullen Sweeney, Cuyahoga County Public Defender, and
Aaron T. Baker, Assistant Public Defender, *for appellee*.

EILEEN A. GALLAGHER, J.:

{¶ 1} This matter is before us on remand from the Supreme Court of Ohio

after it reversed and remanded this court's summary dismissal of *State v. Musarra*,

8th Dist. No. 113487.[1]  The case proceeded to a trial by jury and, after the State rested, the trial court granted Nicholas Musarra's ("Musarra") Crim.R. 29 motion for acquittal based on a finding that the State presented insufficient evidence of venue.  The State appealed and this court dismissed the case, presumably following *State v. Hampton*, 2012-Ohio-5688, ¶ 25, which held that an order granting a Crim.R. 29 motion for acquittal "due to the state's failure to establish venue" is not reviewable on appeal.

{¶ 2} The State appealed to the Supreme Court of Ohio which overruled *Hampton* and found that the State may appeal as of right under R.C. 2945.67(A) "a decision terminating a prosecution based on insufficient evidence of venue . . . ." *State v. Musarra*, 2025-Ohio-5058, ¶ 26.

{¶ 3} In light of *Musarra*, we reverse the trial court's judgment, vacate the journal entry granting an acquittal and remand this case for a new trial or further proceedings as provided by law and consistent with this opinion.

## I.   Facts and Procedural History

{¶ 4} On October 29, 2021, Musarra was indicted for two counts of rape and one count of sexual battery.  Musarra's indictment alleges he committed these crimes in Cuyahoga County, Ohio.  The alleged victim was Jane Doe ("Doe"), Musarra's coworker at Nora's Public House ("Nora's") in Willoughby, Ohio and the

---

[1] The Supreme Court affirmed our dismissal of *State v. Musarra*, 8th Dist. No. 113486, which was consolidated with Case No. 113487.  Only Case No. 113487 is at issue in this appeal.

alleged incident took place on August 6, 2020. According to the Supreme Court's opinion in *Musarra* at ¶ 3,

> The evidence at trial showed that Doe and Musarra had several drinks after work one night and that afterwards, Musarra drove the two of them to his home in Doe's car. The plan was that Doe would call a rideshare from Musarra's home. Doe requested a rideshare from Lyft but fell asleep before it arrived. According to Doe, she awoke to Musarra having vaginal intercourse with her. Doe fled Musarra's home in her car.

{¶ 5} After the State rested its case, defense counsel moved for a judgment of acquittal pursuant to Crim.R. 29(A). Specifically, defense counsel argued, in part, and pertinent to this appeal, that the State failed to present sufficient evidence of venue. According to Musarra, Doe testified that she did not know where the alleged sexual assault took place and there was no evidence that the incident occurred at "the address that is purportedly associated with" Musarra. The State, on the other hand, argued Doe testified that, as she and Musarra were driving to his house, she recalled a sign for E. 185th Street, which is in Cuyahoga County and the detective who investigated this case testified that the incident occurred at Musarra's house, which was located at 18224 LaSalle Road, Cleveland, Ohio, which is in Cuyahoga County.

{¶ 6} The court denied Musarra's motion for acquittal but reserved the right to revisit its ruling and ordered the parties to submit additional case law regarding the issue of venue. Musarra then called two witnesses to testify in his case-in-chief. When trial reconvened the next day, the court went on the record and granted

Musarra's Crim.R. 29 motion for acquittal, finding that "the facts that were elicited during this trial have not established venue . . . ."

{¶ 7} In reversing this court's summary dismissal of the State's appeal, the *Musarra* Court held as follows: "Despite the trial court's labeling its decision a judgment of acquittal, a determination that venue has not been established is not equivalent to a determination that the elements of an offense have not been proved. Therefore, the trial court's decision was a dismissal of the indictment, not a judgment of acquittal." *Id.*, 2025-Ohio-5058, at ¶ 2. The *Musarra* Court further stated that the State may appeal a dismissal of an indictment and instructed this court that this appeal is "ripe for review." *Id.* at ¶ 25-27. *See also* R.C. 2945.67(A) ("A prosecuting attorney . . . may appeal as a matter of right any decision of a trial court in a criminal case . . . which . . . grants a motion to dismiss . . . an indictment . . . .").

{¶ 8} On appeal, the State assigns one error for our review:

> I. The trial court erred in terminating the prosecution for insufficient venue.

## II. Law and Analysis

### A. Venue in General

{¶ 9} Pursuant to R.C. 2901.12(A), "[t]he trial of a criminal case in this state shall be held in a court having jurisdiction of the subject matter, and . . . in the territory of which the offense or any element of the offense was committed." *See also* Crim.R. 18(A) ("The venue of a criminal case shall be as provided by law."); Ohio Const. Art. I, § 10 ("In any trial, in any court, the party accused shall be allowed

. . . to have . . . a speedy public trial by an impartial jury of the county in which the offense is alleged to have been committed . . . .").

{¶ 10} This court has held that "it is not essential that the venue of the crime be proved in express terms, provided it is established by all the facts and circumstances beyond a reasonable doubt that the crime was committed in the county and state as alleged in the indictment or criminal affidavit." *State v. Hollins*, 2020-Ohio-4290, ¶ 36 (8th Dist.). "Venue is satisfied where there is a sufficient nexus between the defendant and the county of the trial." *State v. Chintalapalli*, 88 Ohio St.3d 43, 45 (2000). *See also State v. Roman-Navarre*, 2025-Ohio-3156, ¶ 126 (5th Dist.) (Venue "may be inferred from the facts and circumstances presented at trial.").

### B. Dismissal of Indictment Based on Insufficient Evidence of Venue is an Issue of First Impression

{¶ 11} The parties argue, and this court agrees, that this issue is one of first impression in Ohio. In 2012, the *Hampton* Court noted that "[o]ver a century of well-established jurisprudence clearly mandates that a motion for judgment of acquittal must be granted when the evidence is insufficient for reasonable minds to find that venue is proper." *Hampton*, 2012-Ohio-5688, at ¶ 24. However, in 2023, the United States Supreme Court released *Smith v. United States*, 599 U.S. 236, 254 (2023), which held that a court's "decision that venue . . . was improper did not adjudicate [the defendant's] culpability. It thus does not trigger the Double Jeopardy Clause." *Musarra*, 2025-Ohio-5058, cited *Smith* to overrule *Hampton*. Our research reveals that Ohio cases with similar procedural postures as this case —

ending a criminal proceeding at the defendant's request based on the State presenting insufficient evidence of venue — are based on Crim.R. 29 motions for acquittal.

{¶ 12} Indeed, Crim.R. 29(A) contemplates situations in which the defendant requests a judgment entry of acquittal "if the evidence is insufficient to sustain a conviction" of an offense charged.[2] Under *Hampton*, this used to encompass venue. *Hampton* at ¶ 20. Under *Musarra*, it no longer does. "[V]enue is a fact necessary to show compliance with a defendant's constitutional and statutory rights. However, venue is not a fact necessary to show whether an offense has been committed." *Id.* at ¶ 17. In other words, "venue is not an element of an offense." *Id.* at ¶ 12. As a result, *Musarra* held that Crim.R. 29 is not applicable to the court's decision on venue in this case. *Musarra* at ¶ 15.

{¶ 13} Crim.R. 48, which governs dismissals of criminal indictments, also does not apply to this case. To be sure, Crim.R. 48(A) contemplates situations in which the State requests leave to dismiss an indictment, and Crim.R. 48(B) contemplates situations in which the court sua sponte dismisses an indictment over objection by the State. Neither of these situations occurred in this case. Furthermore, Crim.R. 12 governs pretrial motions and is also inapplicable to this case, because Musarra did not file a pretrial motion regarding venue. Additionally, R.C. 2945.08 governs "prosecution in wrong county," and this statute is also

---

[2] Crim.R. 29(A) also contemplates sua sponte acquittals for insufficient evidence, but that did not occur in this case.

inapplicable to this case, because Musarra's argument is not that the State alleged the offenses occurred in the wrong county. Rather, Musarra's argument is that the State failed to prove the offenses occurred in the county the State alleged in the indictment.

### C. Standard of Review

{¶ 14} The parties in this case disagree on the standard of review we are to apply to the trial court's decision on venue. The State argues that we should apply a de novo or sufficiency of the evidence standard. Musarra argues that we should apply a de novo, abuse of discretion or manifest weight of the evidence standard. Because this is an issue of first impression, research reveals inconsistent holdings on the standard of review as well. Dismissals of indictments can be based on several reasons, e.g., defective indictments, statutes of limitations, failure to prosecute or speedy trial violations. None of the aforementioned reasons to dismiss an indictment applies to the case at bar.

{¶ 15} The standard of review appellate courts apply to these scenarios varies from, inter alia, abuse of discretion (*State v. Matthews*, 2021-Ohio-3556, ¶ 13 (3d Dist.); *Cleveland v. Gatens*, 2021-Ohio-313, ¶ 28 (8th Dist.); *State v. Cooper*, 2026-Ohio-101, ¶ 10 (1st Dist.)) to de novo (*State v. Knox*, 2016-Ohio-5519, ¶ 12 (8th Dist.); *State v. Davis*, 2008-Ohio-6741, ¶ 22 (9th Dist.); *In re D.C.*, 2017-Ohio-114, ¶ 14 (10th Dist.)) to a mixed standard similar to reviewing a motion to suppress (*In re AJS*, 2008-Ohio-5307, ¶ 51; *State v. Cook*, 2009-Ohio-4917, ¶ 25 (6th Dist.); *State v. Hahaj*, 2025-Ohio-52, ¶ 15 (1st Dist.)).

{¶ 16} At the time of the court proceeding at issue in this case, both parties, and the trial court, operated under the presumption that Musarra's Crim.R. 29 motion for acquittal was just that — a motion for acquittal. The standard of review for Crim.R. 29 motions for acquittal is well established: "A Crim.R. 29 motion questions the sufficiency of the evidence, and we apply the same standard of review to a trial court's ruling on a Crim.R. 29 motion as we do in reviewing challenged to the sufficiency of the evidence presented at trial." *State v. McQuistion*, 2024-Ohio-3011, ¶ 24 (8th Dist.).

{¶ 17} Because the standard of review applicable to this situation was not in dispute, it was not raised or argued by the parties in the trial court and the trial court did not pass upon this issue. Typically, a "court of appeals cannot consider [an] issue for the first time without the trial court having had an opportunity to address the issue." *State v. Peagler*, 76 Ohio St.3d 496, 501 (1996). *See also State v. Fletcher*, 2023 Ohio App. LEXIS 4687 (8th Dist. Nov. 16, 2023) (recently citing this proposition of law from *Peagler* with approval). Nonetheless, in *Musarra*, the Ohio Supreme Court instructed us to review the State's appeal. *Musarra*, 2025-Ohio-5058, at ¶ 2 ("The judgment of the Eighth District is reversed, and the cause is remanded to that court for consideration of the State's appeal as of right.").

{¶ 18} Upon review, we find that we need not conclusively reach the standard of review issue because, under any standard, the State presented ample evidence demonstrating that venue was proper in the Cuyahoga County Common Pleas Court in order to withstand a motion to dismiss.

## D. Testimony and Evidence Concerning Venue

{¶ 19} Our review of the testimony and evidence presented at Musarra's trial prior to the State resting its case reflects the following concerning venue.

{¶ 20} The Cleveland police officer who responded to a dispatch call concerning a sexual assault on August 6, 2020, testified that the victim was Doe, she was in the process of having a rape kit performed at University Hospitals in Cleveland, she refused to give the name of the suspect and the incident occurred at approximately 3:45 a.m. at "her alleged assailant's home." According to this police officer, Doe said she left Nora's with the alleged assailant and she had no memory of the drive from Nora's to her alleged assailant's house. Doe did not recall where the alleged assailant lived but did remember passing a sign that said E. 185th Street.

{¶ 21} Doe testified that, on the night of August 5, 2020, she and Musarra were bartending at Nora's. After Nora's closed, Doe, Musarra and another bartender, Anthony Garcia ("Garcia"), stayed and drank alcohol. When she realized she was too drunk to drive, Doe planned to take a rideshare to her mother's house, which was five minutes from Nora's. Garcia went home and left Musarra and Doe at Nora's. Musarra told Doe that he did not have his car, but he needed to get home. According to Doe, Musarra presented with the following plan: "And that's kind of when this plan to — for him to drive my car with me to his house and then I would Uber from there and he could bring it back to the bar, and I would pick it up."

{¶ 22} Doe testified that she was "very drunk" at this point and agreed to the plan. Doe also testified that Musarra's house was closer to her house in University

Heights, which is in Cuyahoga County, than it was to Nora's or her mother's house, so she would take a rideshare home rather than take a rideshare to her mother's. According to Doe, they got into her car and Musarra started to drive. Doe testified that she did not know to where they were driving. When they arrived at Musarra's house, they entered through the back door to the basement where there was a mattress on the floor and a couch. Doe removed her shoes and fell asleep on the mattress.

{¶ 23} According to Doe, the next thing she remembered was waking up to Musarra on top of her having vaginal intercourse with her. Doe jumped up and yelled. Musarra told Doe to lower her voice or she "would wake somebody up." Doe ran out of the house and drove home. Doe further testified that she later viewed a receipt from the rideshare company Lyft, and it said she had ordered a car before she fell asleep, but it was cancelled by the driver at 3:39 a.m.

{¶ 24} Doe testified that, ultimately, she told the Cleveland police that Musarra was the person who raped her.

{¶ 25} During her testimony, Doe agreed or confirmed that: Musarra offered to drive her "to his home"; on the night of the incident, they were "at Nick's house" and they walked "down into the basement"; she did not recall the drive from "Nora's to Nick's house," "from Nora's to Mr. Musarra's house" and "the ride between Nora's and Nick's residence." She also testified about "going into the basement and making a joke [to Musarra] that, you're 30, and like this is where you live." Additionally, Doe was asked about events that happened "once you were at Nick's residence."

{¶ 26} The emergency room doctor who treated Doe for sexual assault on the morning of August 6, 2020 testified that, according to Doe's medical records, the alleged rape occurred at approximately 3:45 a.m. The location of the assault was a "[b]asement apartment . . . [o]ff 185th near Collinwood."

{¶ 27} Garcia, the third bartender who drank at Nora's with Doe and Musarra after work on August 5, 2020, testified that he left Doe and Musarra at the bar and went home between 11:00 p.m. and midnight. According to Garcia, August 5, 2020 could have been around the time when Musarra did not have a car. Garcia recalled this because he gave Musarra a ride home "a handful of times" after work. Garcia testified that he next saw Musarra one or two days later at work and Musarra told Garcia that he and Doe had "hooked up."

{¶ 28} Taylor Sterling ("Sterling") testified that she is a bartender at Nora's and she worked with both Musarra and Doe during the summer of 2020. A rumor spread amongst coworkers that, on the night of August 5, 2020, Musarra, Doe and Garcia stayed at Nora's after work and had drinks and, at some point, Doe and Musarra went "home together." Sterling clarified that "home" was "his place," "his residence" and "Nick's house." Sterling spoke with Musarra who said, "it was consensual, and then [Doe] just got up and like freaked out and left." According to Sterling, Doe told her a "separate" story about what happened that night, although Sterling did not testify about what Doe said to her. Asked if it was her understanding that Doe and Musarra went back to Musarra's house that night, Sterling answered, "As far as — yes, it was."

{¶ 29} Cleveland Police Detective Richard Jackson ("Jackson") testified that he investigated a case involving Doe and Musarra. Asked for the location of the incident he was investigating, Jackson testified as follows:

A:   I believe it was the 185th area — East 185th area.

Q:   What city?

A:   City of Cleveland.

Q:   What county?

A:   Cuyahoga County.

{¶ 30} Jackson testified that Doe eventually told him the alleged assailant was Musarra. Once, Musarra was identified, Jackson went to Nora's to interview employees and obtain more information and Jackson located Musarra's address by conducting a search on OHLEG.[3] Jackson testified that he "went to . . . Musarra's house to see if I could talk to him [and] get a statement from him." When Jackson went to Musarra's house, he spoke with Musarra's brother. Jackson was shown his report of this case and identified Musarra's address as 18224 LaSalle Road, Cleveland, Ohio. Jackson further testified that this address is in Cuyahoga County. According to Jackson, Musarra was not home at the time, but Jackson left his business card with Musarra's brother. Jackson attempted to talk to Musarra's mother, who also lived at 18224 LaSalle Road. Musarra later called Jackson.

{¶ 31} Jackson testified about photographs he took of Musarra's house at 18224 LaSalle Road that were introduced into evidence by the State at trial. Asked

---

[3] The acronym OHLEG is neither defined nor explained in the trial transcript.

why he took photographs of the house on LaSalle, Jackson responded, "That's where the incident occurred."

**E. Analysis**

{¶ 32} In *Highland Hills v. Safford*, 2026-Ohio-456 (8th Dist.), this court affirmed the defendant's misdemeanor conviction for a traffic violation and overruled the defendant's assignment of error alleging that the municipality failed to prove venue. Specifically, this court found as follows:

> In this case, venue was established by both direct and circumstantial evidence. Olson, the driver of the Dodge Ram, testified that the accident occurred in Highland Hills. The Highland Hills Police Department responded to the scene. The detective wore his city-issued police uniform and drove a marked vehicle, with "Highland Hills Police" printed in large letters on the side of the vehicle. This vehicle is easily seen in the detective's body-cam video.
>
> Detective Fike's testimony identified the location as the intersection of Warrensville Center Road and Northfield Road, which is in Highland Hills. Detective Fike also twice testified that the accident occurred in Highland Hills.
>
> Additionally, the citation, which Detective Fike testified to, noted the location of the accident as having occurred in Highland Hills, Cuyahoga County, Ohio.

*Id.* at ¶ 17-19.

{¶ 33} In *Parma v. Gardner*, 2025-Ohio-5517 (8th Dist.), this court affirmed the defendant's conviction for disorderly conduct, among other offenses, and overruled the defendant's assignment of error alleging that the municipality failed to prove venue. Specifically, this court found that Parma police officers arrested the defendant at Marc's on West Ridgewood, which was where the disorderly conduct

took place. *Id.* at ¶ 31. Video evidence shows Parma police vehicles at the scene and the defendant is heard yelling that she is in Parma.

{¶ 34} In *In re S.H.*, 2026-Ohio-1077 (1st Dist.), the court affirmed the juvenile's delinquency adjudication and overruled the juvenile's assignment of error alleging that the State failed to prove venue. Specifically, the court found as follows:

> Here, the evidence includes more than just a responding police department and a road name. Here, the evidence presented by the State includes mention of two responding police departments (Indian Hill and Montgomery), several road names that are all in the same area and connect in some manner (Kugler Mill, Given, Camargo, Keller, [and] Spooky Hollow), several landmarks (the Little Red Schoolhouse and the Livingston Lodge), and descriptions of the area ("rural type feel, a lot of trees, no businesses, one hundred percent residential"; forested; [and] no street lights), all of which identify the area in which this incident occurred as Indian Hill. Further, State's exhibit No. S4 identifies the area of the accident on Given Road, which was a Livingston Lodge, as being located in "Cincinnati, Ohio." Even further, the police report attached to the complaint is from the Indian Hill Rangers, the complaint was filed stamped in Hamilton County, and the police report was assigned a Hamilton County case number.

*Id.* at ¶ 17.

{¶ 35} The State presented evidence, via Jackson's testimony, that Musarra lived at 18224 LaSalle Road in Cleveland, Ohio, which is in Cuyahoga County. This evidence was corroborated by Doe's testimony that she recalled a sign for E. 185th Street when she and Musarra were driving to his house and Musarra's house was closer to her house in Cuyahoga County than it was to Nora's. It is undisputed that Nora's is not in Cuyahoga County; rather, it is in Lake County, which is adjacent to Cuyahoga County. Jackson further testified that he took photographs of 18224 LaSalle Road, which is in Cuyahoga County and is where Musarra lives, because it

was where the sexual assault at issue in this case occurred. Jackson also testified that Musarra's brother and mother lived at 18224 LaSalle Road.

{¶ 36} Doe's medical records indicate that the sexual assault happened "[o]ff 185th near Collinwood."

{¶ 37} A Cleveland police officer testified that the incident occurred at Doe's "alleged assailant's house." Doe testified that the plan was to go to Musarra's house that night. Doe further testified that she and Musarra went to the basement of Musarra's house, she fell asleep and she woke as Musarra was raping her. Garcia's testimony corroborates the general timeline of events and establishes that Musarra may have been without a vehicle at the time of the incident which, in turn, corroborates Doe's testimony that Musarra did not have a ride home that night. Garcia further testified that Musarra said he and Doe had "hooked up" after the three of them had drinks on the night of August 5, 2020.

{¶ 38} Sterling testified that it was her understanding, through workplace gossip, that Doe and Musarra went to his house on the night of August 5, 2020 and that Musarra told her "it was consensual."

{¶ 39} In addition to the evidence presented at trial, we note that the Ohio Supreme Court in *Musarra* found that the alleged sexual assault of Doe occurred at Musarra's house. *Musarra*, 2025-Ohio-5058, at ¶ 3.

{¶ 40} Upon review on remand, we find that the trial court erred by terminating this case for the State's failure to establish venue, because all of the State's evidence presented at trial reveals that the alleged sexual assault occurred at

18224 LaSalle Road, Cleveland, Ohio, which is in Cuyahoga County. Question about venue is simply not a reason this case should not have gone to the jury for determination of Musarra's guilt.

{¶ 41} Accordingly, the State's sole assignment of error is sustained.

{¶ 42} Judgment reversed, journal entry of acquittal vacated and case remanded to the trial court for a new trial or further proceedings as provided by law and consistent with this opinion.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN A. GALLAGHER, JUDGE

MICHELLE J. SHEEHAN, A.J., and
TIMOTHY W. CLARY, J., CONCUR